1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                            EASTERN DISTRICT OF CALIFORNIA

10

11   LASHAWN VELASQUEZ, individually,        No.  2:12-cv-02312-MCE-CKD
     and on behalf of other members of the
12   general public similarly situated, and as
     aggrieved employee pursuant to the
13   Private Attorneys General Act           **MEMORANDUM AND ORDER**

14                   Plaintiff,

15          v.

16   HMS HOST USA, INC., a Delaware
     Corporation, et al.,
17
                     Defendants.
18

19

20          Plaintiff Lashawn Velasquez ("Plaintiff") seeks redress from Defendants HMS

21   Host USA, Inc., Donald Frazee, and Host International, Inc. (collectively, "Defendants")

22   for violations of California state law.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                              1

On July 13, 2012, Plaintiff filed a Class Action Complaint in the Superior Court of the State of California, County of Sacramento, against Defendants, on behalf of herself and others similarly situated, alleging claims for unpaid overtime in violation of California Labor Code sections 550 and 1198, unpaid minimum wages in violation of Labor Code sections 1194, 1197, and 1197.1, failure to timely pay wages due upon termination in violation of Labor Code section 201 and 202, unlawful wage deductions in violation of Labor Code sections 221 and 224, violations of the Private Attorneys General Act of 2004, and unfair and unlawful competition in violation of California Business and Professions Code section 17200, <u>et seq.</u>  Defendants removed the case to this Court on September 7, 2012, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (ECF No. 1.)  On October 4, 2012, Plaintiff moved to remand the case to state court.  (ECF No. 6.)  Defendants filed a timely opposition to Plaintiff's motion.[1]  (ECF No. 10.)

## FACTUAL BACKGROUND[2]

Plaintiff alleges that she was employed as a non-exempt, hourly paid "Cashier" from August 2009 to December 2010 at Defendants' Sacramento, California, airport location.  While Plaintiff was employed at the Sacramento location, employees were not paid for all hours worked because all hours worked were not recorded.  Furthermore, although Defendants knew or should have known that Plaintiff and putative class members were entitled to receive certain wages as overtime compensation, Plaintiff and putative class members did not receive such wages.

///

///

_____

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

[2] The following recital of facts is taken from Plaintiff's Class Action Complaint.  (ECF No. 1, Ex. 1.)

1    Additionally, Plaintiff and putative class members were entitled to receive at least

2    minimum wages for work that Defendants required be done off the clock, but Plaintiff and

3    putative class members did not receive such wages for this off the clock work.  Similarly,

4    Plaintiff and putative class members did not receive all rest periods that they were

5    entitled to.  Plaintiff and putative class members likewise did not receive complete and

6    accurate wage statements from Defendants, although Defendants knew or should have

7    known that Plaintiff and putative class members were entitled to these statements.

8    Plaintiff and putative class members were also entitled to timely payment of all wages

9    during their employment and to timely payment of wages earned upon termination, but

10   did not receive timely payment of these wages either during their employment or upon

11   termination.  Finally, although Defendants did not have express written authorization to

12   do so, Defendants deducted the costs of non-slip shoes that Plaintiff and putative class

13   members were required to wear.

14

15                              **LEGAL BACKGROUND**[3]

16

17        In September 2003, the California Legislature enacted the Labor Code Private

18   Attorneys General Act of 2004 ("PAGA").  Cal. Lab. Code § 2698, et seq.  The

19   Legislature declared that adequate financing of labor law enforcement was necessary to

20   achieve maximum compliance with state labor laws, that staffing levels for labor law

21   enforcement agencies had declined and were unlikely to keep pace with the future

22   growth of the labor market, and that it was therefore in the public interest to allow

23   aggrieved employees, acting as private attorneys general, to recover civil penalties for

24   violations of the Labor Code, with the understanding that labor law enforcement

25   agencies were to retain primacy over private enforcement efforts.

26   ///

27   _____

28        [3] The following summary of the Private Attorneys General Act of 2004 is taken from Arias v. Sup. Ct., 46 Cal. 4th 969, 980-81 (2009).

1    Pursuant to PAGA, an "aggrieved employee" may bring a civil action personally

2   and on behalf of other current, or former, employees to recover civil penalties for

3   violations of the California Labor Code.  Cal. Lab. Code § 2699(a).  PAGA defines an

4   "aggrieved employee" as "any person who was employed by the alleged violator and

5   against whom one or more of the alleged violations was committed."  Id. § 2699(c).

6   Seventy-five percent of the civil penalties recovered go to the Labor and Workforce

7   Development Agency, leaving the remaining twenty-five percent for the "aggrieved

8   employees."  Id. § 2699(i).

9

10                                      **STANDARD**

11

12    When a case "of which the district courts of the United States have original

13   jurisdiction" is initially brought in state court, the defendant may remove it to federal court

14   "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  There are

15   two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under

16   28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.  A district court

17   has federal question jurisdiction in "all civil actions arising under the Constitution, laws,

18   or treaties of the United States."  Id. § 1331.  A district court has diversity jurisdiction

19   "where the matter in controversy exceeds the sum or value of $75,000, . . . and is

20   between citizens of different states, or citizens of a State and citizens or subjects of a

21   foreign state . . . ."  Id. § 1332(a)(1)-(2).

22    Diversity jurisdiction requires complete diversity of citizenship, with each plaintiff

23   being a citizen of a different state from each defendant.  28 U.S.C. § 1332(a)(1);

24   Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (stating that complete diversity of

25   citizenship is required); Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir.

26   2001) (same).  The "one exception to the requirement of complete diversity is where a

27   non-diverse defendant has been 'fraudulently joined'" to defeat diversity.  Morris,

28   236 F.3d at 1067.

4

1   Allegations of fraudulent joinder can succeed only on a showing that the plaintiff has

2   failed to assert a cause of action against that defendant, "and the failure is obvious

3   according to the well-settled rules" of state law.  United Computer Sys., Inc. v. AT&T

4   Corp., 298 F.3d 756, 761 (9th Cir. 2002) (citing Morris, 236 F.3d at 1067).  The court

5   may look beyond the pleadings and consider affidavits or other evidence to determine if

6   the joinder was a sham.  See Morris, 236 F.3d at 1068 (citing Cavallini v. State Farm

7   Mut. Auto Ins. Co., 44 F.3d 256, 263 (9th Cir. 1995) ("[F]raudulent joinder claims may be

8   resolved by 'piercing the pleadings' and considering summary judgment-type evidence

9   such as affidavits and deposition testimony.")).

10         A motion to remand is the proper procedure for challenging removal.  "The party

11   invoking the removal statute bears the burden of establishing federal jurisdiction."

12   Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (internal citations

13   omitted).  Courts "strictly construe the removal statute against removal jurisdiction."

14   Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted).  "[I]f

15   there is any doubt as to the right of removal in the first instance," the motion for remand

16   must be granted.  Gaus, 980 F.2d at 566.  Therefore, if it appears "at any time before

17   final judgment that the district court lacks subject matter jurisdiction, the case shall be

18   remanded" to state court.  28 U.S.C. § 1447(c).

19

20                             **ANALYSIS**

21

22         **A.**       **Diversity Jurisdiction and Fraudulent Joinder**

23

24         "Fraudulent joinder is a term of art" used to describe a non-diverse defendant who

25   has been joined to an action for the sole purpose of defeating diversity.  McCabe v. Gen

26   Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).

27   ///

28   ///

1   "In the Ninth Circuit, a non-diverse defendant is deemed fraudulently joined if, after all

2   disputed questions of fact and all ambiguities in the controlling state law are resolved in

3   the plaintiff's favor, the plaintiff could not possibly recover against the party whose

4   joinder is questioned."  Nasrawi v. Buck Consultants, LLC, 776 F. Supp. 2d 1166, 1169-

5   70 (E.D. Cal. 2011) (citing Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1426 (9th Cir.

6   1989)).  "[T]here is a general presumption against fraudulent joinder," and the defendant

7   bears a heavy burden, as "[f]raudulent joinder must be proven by clear and convincing

8   evidence."  Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir.

9   2007) (internal citations omitted).  "A court may look beyond the pleadings to determine if

10  a defendant is fraudulently joined, but 'a plaintiff need only have one potentially valid

11  claim against a non-diverse defendant' to survive a fraudulent joinder challenge."

12  Nasrawi, 776 F. Supp. at 1170 (citing Knutson v. Allis–Chalmers Corp., 358 F. Supp. 2d

13  983, 993–95 (D. Nev. 2005); Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir.

14  1998)).  "Accordingly, a defendant seeking removal based on an alleged fraudulent

15  joinder must do more than show that the complaint at the time of removal fails to state a

16  claim against the non-diverse defendant."  Id. (citing Burris v. AT&T Wireless, Inc.,

17  No. C 06-02904 JSW, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006)).  "Remand

18  must be granted unless the defendant shows that the plaintiff would not be afforded

19  leave to amend his complaint to cure [the] purported deficiency."  Id.  Thus, "[t]he non-

20  diverse defendant is not fraudulently joined if there is *any possibility* that the plaintiff will

21  succeed in its claim against that defendant."  Wong v. Michaels Stores, Inc.,

22  No 1:11-cv-00162-AWI, 2012 WL 718646, at *4 (E.D. Cal. Mar. 5, 2012) (emphasis in

23  original).

24       In this case, Plaintiff is a citizen of California.  (ECF No. 1 at 21).  Defendants

25  HMS Host USA, Inc. and Host International, Inc. are citizens of Delaware, their state of

26  incorporation, and Maryland, where they each have their principal place of business.

27  (ECF No. 1 at 3.)  Defendant Frazee is a California citizen.  (ECF No. 1 at 21.)

28  ///

6

1    Thus, on the face of the complaint, Plaintiff is not diverse from all Defendants, and thus

2    diversity jurisdiction does not exist.

3          Defendants first contend that Frazee is fraudulently joined because the complaint

4    fails to adequately allege facts establishing a cause of action against Defendant Frazee.

5    However, the test for whether a defendant is fraudulently joined is whether the plaintiff

6    can state a claim in state court against that defendant.  McCabe, 811 F.3d at 1339.

7    Because "Twombly and Iqbal clarify the federal pleading standard set forth by Rule 8(a)

8    but make no comment as to the propriety of pleading under California law[,] . . . courts

9    have refused to apply the Twombly and Iqbal standards to determine whether a

10   defendant was fraudulently joined."  Wong, 2012 WL 718646, at *5 (internal citations

11   omitted).  "Rather, courts employ the pre-Twombly 'no set of facts' standard of Conley v.

12   Gibson, 355 U.S. 41, 45-46 (1957)."  Id. (citing Black Donuts, Inc. v. Sumitomo Corp. of

13   Am., 2010 U.S. Dist. LEXIS 30859 (C.D. Cal. Mar. 3, 2010)).  That standard provides

14   that "a complaint should not be dismissed for failure to state a claim unless it appears

15   beyond doubt that the Plaintiff can prove no set of facts in support of his claim which

16   would entitle him to relief."  355 U.S. at 45-46.

17         Plaintiff alleges that Defendant Frazee was the General Manager for Host at the

18   Sacramento airport location while Plaintiff was employed there.  (Id.) Plaintiff also alleges

19   that "Defendants"—a phrase which Plaintiff defines to include Frazee—failed to properly

20   staff the work locations which resulted in depriving Plaintiff and class members of

21   overtime and meal breaks.  (ECF No. 1 at 22.)  Plaintiff asserts that Defendant Frazee

22   "is named as a 'person acting on behalf of an employer' who violated, and caused to be

23   violated, various sections of Division 2, art 2, Chapter 1, and various sections of the

24   applicable Industrial Welfare Commission Order which regulate days and hours of work."

25   (Id.)  Plaintiff thus seeks recovery from Defendant Frazee under PAGA and section 558

26   of the California Labor Code.  Section 558 of the Labor Code permits civil actions

27   against high-level employees who contribute to a corporate employer's Labor Code

28   violations.

1    See Cal. Lab. Code § 558(a).  While Plaintiff's claim against Defendant Frazee does not

2    meet the Rule 8(a) standard for pleading, the Twombly requirements do not control for

3    purposes of determining whether to remand.  See supra.  Rather, the Court must assess

4    whether Plaintiff could prove a set of facts that would entitle her to relief against

5    Defendant Frazee under PAGA or section 558 of the Labor Code.  See supra.  Under

6    Labor Code section 558, claims against corporate agents succeed when the plaintiff

7    alleges specific actions taken by the individual defendants that caused labor code

8    provisions to be violated.  See Ochoa-Hernandez v. Cjaders Foods, Inc.,

9    No. C 08-02073 MHP, 2009 WL 1404694, at *3-4 (N.D. Cal. May 19, 2009) (citing

10   Ontiveros v. Zamora, No. 2:08-cv-00567-LKK (E.D. Cal. Jan. 20, 2009) (holding that

11   claims can be maintained against an individual defendant who was a corporate officer

12   when plaintiff adequately pleads that the individual defendant "caused" the wage and

13   hour violations alleged in the complaint); Mendoza v. M.A.T. & Sons Landscape, Inc.,

14   No. CV032292 (Sup. Ct. Cal., County of San Joaquin, Dec. 8, 2008) (same)).  Given

15   Plaintiff's allegations regarding Defendant Frazee's position at the Sacramento location,

16   and Plaintiff's allegations regarding the violations committed at that location, Plaintiff

17   could feasibly amend her complaint to include more specific actions taken by Defendant

18   Frazee that would entitle Plaintiff to relief against him pursuant to section 558.

19   Defendants have thus failed to meet their high burden of showing that there is not "*any*

20   *possibility* that the plaintiff will succeed in its claim against that Defendant," and have

21   failed to show that the claim is futile.  Wong, 2012 WL 718646, at *4.

22        Second, Defendants argue that Defendant Frazee cannot be held liable under

23   Section 558 as a matter of law because there is "an absence of authority where an

24   individual manager has been held liable for civil penalties under section 558.  Rather,

25   where an individual has been found liable, that individual has been an owner who was

26   alleged to have exercised a high degree of control over the employees at issue."  (ECF

27   No. 10 at 11.)  However, section 558 clearly allows liability to lie with an "employer or

28   person acting on behalf of an employer . . . ."  Cal. Lab. Code § 558(a).

1   To the extent that there is an absence of authority regarding whether an individual

2   manager can be held liable for civil penalties under this section, it is an ambiguity in

3   controlling state law that must be "resolved in the plaintiff's favor."  Nasrawi, 776 F.

4   Supp. 2d at 1169-70.  Resolving this ambiguity in Plaintiff's favor requires finding that an

5   individual manager, and thus Defendant Frazee, could be held liable for civil penalties

6   under section 558.

7        Moreover, Vigil v. HMS Host USA, Inc., No. C 12-02982, 2012 WL 3283400 (N.D.

8   Cal. Aug. 10, 2012), belies Defendants' assertion that an individual must be an owner to

9   be liable under section 558.  In Vigil, the Northern District remanded a section 558 claim

10  against a store manager who was a non-diverse defendant, suggesting that a section

11  558 claim against a non-owner is proper, or at least is not invalid as a matter of law.  Id.

12  Similarly, in Ochoa-Hernandez, the Northern District held that a plaintiff may amend her

13  complaint to include a section 558 action against individual defendants not simply

14  because the proposed individual defendants "own and/or control [the company]" but

15  because "each of [the] individual[] [Defendants] took specific actions on behalf of [the

16  company] to violate or cause to be violated wage and hour provisions."  2009 WL

17  1404694, at *4.  This holding supports Plaintiff's position that ownership is not necessary

18  for a successful section 558 claim.  As noted above, Plaintiff could feasibly amend her

19  complaint to allege that Defendant Frazee took specific actions on behalf of the

20  company to violate wage and hour provisions.

21       Accordingly, the Court finds that Defendant Frazee is not fraudulently joined.

22  Because the Court finds that the parties are not completely diverse, and diversity

23  jurisdiction therefore does not provide a basis for subject matter jurisdiction in this case,

24  the Court declines to address whether the amount in controversy for diversity jurisdiction

25  is met.

26  ///

27  ///

28  ///

1

**B.     CAFA Jurisdiction**

2

3          Under the Class Action Fairness Act of 2005 ("CAFA"), federal district courts have

4    original jurisdiction in any civil action where (1) "the matter in controversy exceeds the

5    sum or value of $5,000,000, exclusive of interest and costs," (2) the action is pled as a

6    class action involving more than 100 putative class members, and (3) "any member of a

7    class  of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C.

8    § 1332(d).  CAFA also provides that "the claims of the individual class members shall be

9    aggregated to determine whether the matter in controversy exceeds the sum or value of

10   $5,000,000."  Id. § 1332(d)(6).  Because CAFA allows for federal jurisdiction where only

11   minimal, rather than complete, diversity exists, "[§] 1332(d) thus abandons the complete

12   diversity rule of covered class actions."  Abrego Abrego v. Dow Chem. Co., 443 F.3d

13   676, 680 (9th Cir. 2006).  The Ninth Circuit has explained that CAFA did not disturb the

14   traditional allocation of the burden of establishing removal jurisdiction, holding "that

15   under CAFA the burden of establishing removal jurisdiction remains, as before, on the

16   proponent of federal jurisdiction."  Id. at 685.

17         The Jurisdiction and Venue allegations of Plaintiff's Complaint state: "Plaintiff

18   alleges that the amount in controversy for each class representative, including claims for

19   monetary damages, restitution, penalties, injunctive relief, and a pro rata share of

20   attorneys' fees, is less than seventy-five thousand dollars ($75,000) and that the

21   aggregate amount in controversy for the proposed class action, including monetary

22   damages, restitution, penalties, injunctive relief, and attorneys' fees, is less than five

23   million dollars ($5,000,000), exclusive of interests and costs.  Plaintiff reserves the right

24   to seek a larger amount based upon new and different information resulting from

25   investigation and discovery."  (ECF No. 1 at 20.)

26   ///

27   ///

28   ///

1   Plaintiff's prayer for relief again states: "Plaintiff, on behalf of all others similarly situated,

2   prays for relief and judgment against Defendants, jointly and severally, as follows:

3   (1) For damages, restitution penalties, injunctive relief, and attorneys' fees in excess of

4   twenty-five thousand dollars but not to exceed five million dollars, exclusive of interests

5   and costs.  Plaintiff reserves the right to seek a larger amount based upon new and

6   different information resulting from investigation and discovery."  (ECF No. 1 at 42.)

7

8            **1.**     **Defendants' Burden**

9

10       Plaintiff contends that the Court lacks CAFA jurisdiction because Plaintiff has pled

11  an amount in controversy less than CAFA's requirement for federal jurisdiction

12  ($5 million), and Defendant has failed to prove with legal certainty that CAFA's

13  jurisdictional amount is met.  Lowdermilk v. United States Bank National Association

14  provides that "where the plaintiff has pled an amount in controversy less than

15  $5,000,000, the party seeking removal must prove with legal certainty that CAFA's

16  jurisdiction amount is met."  479 F.3d 994, 1000 (9th Cir. 2007).  Defendants, on the

17  other hand, argue that because Plaintiff's Complaint includes language reserving the

18  right to seek a larger amount, Plaintiff's asserted amount in controversy is unclear or

19  ambiguous, and thus Defendants must prove the jurisdictional amount only by a

20  preponderance of the evidence.  A preponderance of the evidence is the appropriate

21  standard "where it is unclear or ambiguous from the face of a state court complaint

22  whether the requisite amount in controversy is pled."  Guglielmino v. McKee Foods

23  Corp., 506 F.3d 696, 699 (9th Cir. 2007) (citing Sanchez v. Monumental Life Ins. Co.,

24  102 F.3d 398, 404 (9th Cir. 1996)).

25       More specifically, Defendants argue that because Plaintiff has reserved the right

26  to seek damages greater than $5 million later, Plaintiff has not actually "[foregone] a

27  potentially larger recovery to remain in state court," and thus Plaintiff's asserted amount

28  in controversy is unclear or ambiguous.

1    The Central District of California dealt with identical language in the complaint, and an

2    identical argument by the defendant, in <u>Jones v. ADT Security Services, Inc.</u>, No. CV 11-

3    7750 PSG, 2012 WL 12744 (C.D. Cal. Jan. 3, 2012).  There, the Court stated:

4        On its face, the Complaint alleges the amounts in controversy are less than

5        the statutory minimums for diversity jurisdiction.  Nonetheless, Defendant
         argues the Complaint is ambiguous . . . [because] Plaintiffs' reservation of
6        rights . . . creates an ambiguity.  The Court disagrees.  The 'reservation of
         rights' language used by the Plaintiffs states nothing more than what
7        Plaintiffs would already have the right to do.  If Plaintiffs find 'based upon
         new and different information resulting from investigation and discovery
8        that their potential discovery is larger, then they could seek to amend their
         Complaint.  In other words, the 'reservation of rights' does not add anything
9        material to the Complaint, and, thus, cannot create an ambiguity as to the
         amount of damages Plaintiffs are seeking at this time.
10

11   2012 WL 12744, at *2.  The Court went on to note that "if Plaintiffs were to later exercise

12   those rights 'reserved' and amend the Complaint to allege greater damages, then

13   Defendant would have another thirty-day period in which to remove this case to federal

14   court." <u>Id.</u> at *3 (citing 28 U.S.C. § 1446(b)).  While the right to remove based on a later

15   filing is normally limited to the first year after an action is filed, that limitation does not

16   apply to cases removed pursuant to CAFA.  <u>Id.</u> (citing 28 U.S.C. § 1453(b) (providing

17   that the one year limitation under § 1446(b) does not apply to class actions)).  The Court

18   observed that this CAFA provision "protected [Defendant] from the possibility that

19   Plaintiffs could plead below the jurisdictional threshold now, wait out Defendant's right to

20   remove, and then amend to allege a large amount in controversy." <u>Id.</u>

21       In this case, as in <u>Jones</u>, Plaintiff's reservation of right does not create an

22   uncertainty about the amount in controversy; it does no more than state a right that

23   Plaintiff already possesses.  Because Plaintiff has specifically alleged that her case does

24   not meet the diversity jurisdiction threshold required for CAFA jurisdiction, Defendants

25   must establish with legal certainty that the amount in controversy exceeds the statutory

26   minimum of $5,000,000.  <u>See Lowdermilk</u>, 479 F.3d at 999.  "The legal certainty

27   standard sets a high bar for the party seeking removal, but it is not insurmountable." <u>Id.</u>

28   ///

1

2. **Amount in Controversy Calculations**

2

3

a. **Unpaid Overtime**

4

5        Plaintiff's first cause of action alleges that she and other non-exempt putative

6   class members "were not paid overtime premium for all the hours they worked in excess

7   of eight hours in a day, in excess of twelve hours in a day, and/or in excess of forty hours

8   in a week." (ECF No. 1 at 31.)  Defendants claim that the amount in controversy for this

9   claim is $843,274.  (ECF No. 1 at 10.)  Defendants arrive at this amount by "using the

10  modest assumption" that each of the 744 putative class members will claim an average

11  of 1 hour of unpaid overtime per week, earned the average wage for their position ($9.56

12  per hour), and worked for an average of 1.52 years during the statute of limitations

13  period.  (Id.)  Thus, Defendants provide the following calculation: 744 class members

14  multiplied by $9.56 per hour, multiplied by 1.5 overtime rate, multiplied by 1 hour per

15  week, multiplied by 52 weeks in a year, multiplied by 1.52 years equals $843,274.  (Id.)

16        However, Defendants' "calculations require the Court to make assumptions that

17  lack evidentiary support."  Vigil, 2012 WL 3283400, at *5.  As in Vigil, "Defendants do not

18  cite to any evidence for [their] assumptio[n] that each class members worked one hour of

19  overtime per week . . . ."  Id.  Plaintiff's complaint alleges that each putative class

20  member worked an unspecified amount of overtime and that each putative class

21  member is entitled to compensation for that time, but Plaintiff does not allege facts

22  supporting Defendants' assumption that every putative class member is entitled to one

23  hour of overtime every week.  As such, "[d]efendant[s'] calculations call for too much

24  extrapolation and speculation for the court to determine damages to a legal certainty."

25  Id.  Thus, this amount cannot be used in calculating whether Plaintiff's damages reach

26  the jurisdictional threshold of $5 million.

27  ///

28  ///

1

2

### b.    Waiting Time Penalties

3

        Plaintiff's third cause of action alleges that Defendants failed to pay Plaintiff and

putative class members formerly employed by Defendants "all their earned wages,

including, but not limited to, overtime wages, minimum wages, and missed meal and rest

period premiums, either at the time of discharge or within seventy-two hours of leaving

Defendants' employ."  (ECF No. 1 at 34.)  Defendants submitted the affidavit of Henry

Tanjuatco, Defendant Host's Human Relations Information Systems Analyst, which

states that 373 non-exempt employees employed at Sacramento Airport have separated

from employment with Defendant Host during the statutory period.  (ECF No. 1-1 at 2.)

Defendants calculate that the amount in controversy for this claim is $845,964.  (ECF

No. 1 at 10.)  Defendants reach this amount by assuming that the maximum penalty of

eight hours per day for thirty days applies to Plaintiff's case.  (Id.)  Defendants thus

provide the following calculations: 373 employees multiplied by eight hours per day,

multiplied by 30 days, multiplied by $9.45 earned per hour.  (Id.)

        However, as in Vigil, "[D]efendants do not cite [P]laintiff's complaint nor provide

concrete support for assuming the maximum penalty for each class member."  2012 WL

3283400, at *6 (citing Garcia v. Roadlink USA Pac., LLC, No. SACV 11–0445 DOC,

2011 WL 2261273 (C.D. Cal. Jun 7, 2011) ("Defendants cannot assume that every class

member is seeking maximum penalties when plaintiffs did not allege so.")).  Moreover,

Defendants fail to provide support for their assumption that the 373 class members

worked an average of eight hours per day, or that each putative class member who

separated from Defendants during the statutory period is entitled to waiting time

penalties at all.  "By merely assuming the maximum aggregate penalty and average

hours worked, Defendants do not carry [their] heavy burden of proving damages with

legal certainty."  Id.  This amount therefore cannot be used in calculating whether

Plaintiff's damages reach the jurisdictional threshold of $5 million.

14

1  ### c.  PAGA

2

3      Defendants contend that the total amount in controversy for Plaintiff's PAGA

4  claims is no less than $2,612,700.  (ECF No. 1 at 10.)  PAGA penalties are $100 for

5  each initial violation and $200 for each subsequent violation.  Cal. Lab. Code

6  § 2699(f)(2).  Defendants employed approximately 325 employees during the period

7  covered by PAGA, and that these employees worked a total of 13,226 pay periods

8  during the statutory period.  (ECF No. 1-1.)  Defendants reach the alleged amount in

9  controversy by calculating: (325 pay periods with initial violations x $100) + (12,901

10  subsequent violations x $200) = $2,612,700.  (ECF No. 1 at 10.)  However, Defendants

11  again offer no evidence to support their assertion that each putative class member is

12  entitled to maximum penalties under PAGA.  Defendants have thus failed to establish

13  this amount in controversy with legal certainty, and this amount likewise cannot be used

14  in calculating whether Plaintiff's damages reach the jurisdictional threshold of $5 million.

15

16  ### d.  Violations of California Business & Professions Code 17200

17

18

19      Plaintiff seeks to enjoin Defendants from committing future wage and hour

20  infractions.  (ECF No. 1 at 40.)  Defendants contend that the request for an injunction

21  "nearly doubles the amount in controversy, as the value to the defendant in enjoining the

22  alleged violation is the cost of the damages created by those violations."  (ECF No. 1 at

23  11.)  Thus, Defendants take the figures calculated above ($2,612,700 + 845,964 +

24  $843,274) and find that the amount in controversy under the claim for injunctive relief is

25  $4,301,938.  (Id.)  Plaintiff contends that Defendants' cost of compliance cannot be

26  included in calculating the amount in controversy, because "Defendant is supposed to

27  comply with state law regardless.  Thus, the prospective costs of complying with the

28  injunctive relief requested are incidental to that relief."  (ECF No. 6 at 27.)

1   Plaintiff is correct.  "Incidental costs are not included in the amount in controversy

2   analysis.  Thus, the costs of injunctive relief properly considered for remand purposes

3   are costs such as restitution of improperly withheld wages, and not the cost of merely

4   complying with the law."  Lopez v. Source Interlink Companies, Inc., No. 2:12-cv-00003-

5   JAM-CKD, 2012 WL 1131543, at *5 (E.D. Cal. Mar. 29, 2012).  Moreover, even if these

6   incidental costs could be included in the calculation of the amount in controversy under

7   CAFA, they are too uncertain, as set forth above, for Defendant to meet the requisite

8   "legal certainty" standard.

9

10                          **e.       Attorneys' Fees**

11

12          Defendants finally contend that the amount in controversy should take into

13   account reasonable attorneys' fees.  However, as Plaintiff points out, "no potential

14   attorneys' fees can be considered in calculating the amount in controversy because

15   Defendants do not actually provide an estimation of the amount of attorneys' fees at

16   issue." (ECF No. 6 at 28.)  Defendants cite only to previous cases in which Plaintiff's

17   counsel represented similar plaintiffs with similar claims.  (ECF No. 1 at 12.)  Defendants

18   provide no dollar amount for the attorneys' fees that Defendants request the Court

19   include in calculating the amount in controversy, and fail to provide any evidence

20   suggesting what that amount might be.  Defendants' allegations regarding attorneys'

21   fees clearly do not meet the legal certainty standard.

22          In sum, Defendants have failed to establish to a legal certainty that the amount in

23   controversy exceeds $5 million.  Accordingly, CAFA does not provide a proper basis for

24   subject matter jurisdiction.

25   ///

26   ///

27   ///

28   ///

1

**CONCLUSION**

2

3          Because there is no basis for federal subject matter jurisdiction in this case,

4    Plaintiff's motion to remand is GRANTED.[4]  The case is hereby remanded to the

5    Superior Court of the State of California, County of Sacramento.

6          IT IS SO ORDERED.

7    Dated:  December 4, 2012

8
                                    _____
9                                   MORRISON C. ENGLAND, JR.
                                    UNITED STATES DISTRICT JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

[4] Accordingly, Defendant's Motion to Dismiss is denied as moot.  (ECF No. 4.)

17